[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-13059

————————————

INVERSIONES Y PROCESADORA TROPICAL INPROTSA, S.A.,
a Costa Rican Corporation,

                                                        Plaintiff-Appellee,

*versus*

DEL MONTE INTERNATIONAL GMBH,
a Swiss Corporation,

                                                        Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cv-24275-FAM

————————————

Before WILSON, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

This appeal requires us to determine whether Del Monte is entitled, as a contempt sanction, to disgorgement of money that INPROTSA made selling pineapples to third parties in violation of a district court's order expressly enjoining it from doing so. The district court rejected Del Monte's disgorgement request. For the reasons that follow, we hold that the district court did not abuse its discretion in doing so.

## I

### A

Del Monte played a major role in developing the so-called "MD-2" pineapple in Hawaii back in the 1980s, and today the MD-2 is the most popular variety of pineapple in the world. In 2001, Del Monte and INPROTSA entered into a unique contract. Pursuant to the agreement, Del Monte gave INPROTSA (for free) approximately 61 million MD-2 seeds to plant, produce, and package on a Costa Rican pineapple plantation. In return, INPROTSA agreed to sell the pineapples exclusively to Del Monte and to destroy or return any leftovers upon the contract's expiration or termination.

Over the course of the 12-year agreement, Del Monte purchased more than $200 million in pineapples from INPROTSA. When the agreement expired in 2013, though, INPROTSA didn't

comply with its obligation to destroy or return the pineapples to Del Monte.  Instead, it sold the pineapples to a third party.

## B

Del Monte initiated arbitration proceedings against INPROTSA in Miami, alleging that INPROTSA breached the agreement and seeking specific performance, injunctive relief, and damages.  On June 10, 2016 the arbitral tribunal issued a final award in Del Monte's favor, concluding that INPROTSA had breached the agreement by selling to a third party, rather than returning or destroying the MD-2 pineapples derived from Del Monte's seeds. The tribunal ordered INPROTSA to return or destroy all MD-2 pineapples derived from Del Monte's seeds and enjoined it from selling the pineapples to third parties until it complied with that mandate.  The tribunal further concluded that Del Monte was entitled to damages in the amount of $26.133 million to compensate it for INPROTSA's breach, along with arbitral costs, attorneys' fees, and pre- and post-judgment interest.  The district court confirmed the arbitral award on May 2, 2017 and entered final judgment on May 17, 2017.

As it turns out, though, INPROTSA didn't return or destroy the pineapples, but rather continued to sell them to third parties. According to Del Monte, "INPROTSA received $23,358,785 in revenues from improper sales of pineapples" from June 2016 to May 2017 (the date of the Final Award to the date of the Award Confirmation)."   And so Del Monte initiated contempt proceedings against INPROTSA and its non-party executive officers Jorge and

Manuel Gurria, claiming that INPROTSA had failed to comply with the order to return or destroy the pineapples and the injunction prohibiting it from selling them to third parties. The district court referred the contempt motion to a magistrate judge, but before the magistrate could issue an R&R, INPROTSA sold even *more* pineapples to third parties. This time, according to Del Monte, INPROTSA received "$16,373,684 in revenues from improper sales of pineapples" from "May 2017 through September 2018 (when 93% of the MD-2 vegetative stock was destroyed)."

The magistrate judge subsequently issued two separate R&Rs recommending (1) that the district court order INPROTSA and its officers to show cause as to why they should not be held in contempt for failing to comply with the order but (2) that the court deny Del Monte's request for disgorgement of INPROTSA's gross revenues from the sales of the contested pineapples on the ground that Del Monte sought the award as a punishment, rather than to compensate it for injury.

The district court adopted the magistrate judge's R&Rs and issued an order to show cause as to why INPROTSA and its officers should not be held in contempt. The district court ultimately found INPROTSA in contempt but said nothing about its officers. It did, however, determine that the magistrate judge was correct to conclude that disgorgement was improper. Contempt awards, the district court explained, may be used only (1) to coerce compliance with a court order or (2) to compensate a party for losses it sustained. There is no dispute that the first of these two reasons is

inapplicable here given that the pineapples have now been destroyed. And as to the second rationale, the district court agreed with the magistrate judge that "Del Monte did not pay monies to INPROTSA which should now be returned." The district court did, though, award Del Monte attorneys' fees.

Del Monte noticed an appeal of the district court's orders adopting the magistrate's R&Rs. We issued a jurisdictional question regarding whether the district court's order—which found INPROTSA in contempt but didn't address the Gurrias—was final and appealable.

In the meantime, Del Monte filed its opening brief, arguing that the district court improperly denied disgorgement, that the Gurrias—who the district court acknowledged were responsible for the injunction violations—should be held liable, and that its failure to expressly hold them in contempt was error.

After receiving Del Monte's initial brief and both parties' responses to the jurisdictional question, we issued a limited remand to the district court for clarification whether it had fully resolved all of the issues raised below. The district court held a hearing to address whether it had jurisdiction to hold the Gurrias in contempt given that they are non-parties. Following the hearing, the district court issued an order clarifying that the Gurrias "are also held in contempt as the corporate representatives for INPROTSA." INPROTSA immediately appealed that order.

We then issued an order allowing the appeal to proceed because the district court's limited remand order demonstrated that

there is a final order as to the contempt issue and, therefore, that appellate jurisdiction is proper in this case. Because Del Monte had already filed its initial brief, we treated INPROTSA's appeal as a cross appeal.[1]

In its response brief / initial cross-appeal brief, INPROTSA contends that the district court's order denying disgorgement should be affirmed because Del Monte failed to show that it suffered any actual loss and, therefore, that such an award would be punitive.

In its reply brief / response cross-appeal brief, Del Monte reiterates its argument that disgorgement is the proper remedy here.

In sum, then, we must decide whether the district court erred in denying Del Monte's request for disgorgement.

## II

"The district court's judgment of civil contempt will be affirmed unless we find that the court abused its discretion." *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990).

---

[1] We can quickly dispose of INPROTSA's cross-appeal of the district court's order holding the Gurrias in contempt. The Notice of Appeal was filed by INPROTSA, was signed by the attorneys representing INPROTSA, and expressly states that INPROTSA is challenging the district court's contempt order. It makes no mention of the Gurrias. In the unique circumstances of this particular case, we think that is reason enough not to consider it.

21-13059                Opinion of the Court                7

### III

"Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; [1] to coerce the defendant into compliance with the court's order, and [2] to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947). Significantly, "[s]uch fine must of course be based upon evidence of complainant's *actual loss* . . . ." *Id.* at 304 (emphasis added). Given that the pineapples have now been destroyed, there is no dispute that the first purpose is inapplicable here. That leaves the second one—to compensate for actual losses.

But in the peculiar circumstances of this case, Del Monte hasn't produced sufficient evidence of any actual losses.[2] Unfair as the outcome may seem—given that INPROTSA indisputably breached its agreement with Del Monte and unquestionably violated the district court's injunction—Del Monte failed to prove that it incurred any out-of-pocket loss. And although Del Monte relies on *F.T.C. v. Leshin*, 618 F.3d 1221 (11th Cir. 2010), for its assertion that disgorgement is proper here, that case actually underscores

---

[2] That is true under either the clear-and-convincing-evidence standard that both the magistrate judge and district court applied, *see* Doc. 287 at 13; Doc. 304 at 14, or a preponderance standard, *see, e.g.*, *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000) (recognizing that in civil contempt actions liability must be shown by clear and convincing evidence, but associated damages need only be proven by a preponderance of the evidence). Because the standard-of-proof issue makes no difference to the resolution of this appeal, we won't pursue the matter further.

our reasoning.  In *Leshin*, the contemnors were ordered to disgorge and return funds to consumers that had been fraudulently taken from them.  *Id.* at 1237.  Here, Del Monte didn't pay money to INPROTSA that it is now entitled to get "back," so disgorgement is not the proper remedy.

This, we emphasize, is a unique case arising out of a unique contract.  Pursuant to the parties' agreement, after its expiration, INPROTSA was to either destroy or return the pineapples to Del Monte, but was not to sell them to third parties.  So during the time that Del Monte claims to have suffered damages—namely, after the contract had expired—it wasn't actually entitled to anything.  If INPROTSA hadn't violated the agreement, Del Monte wouldn't have been in a better situation financially.  So ordering INPROTSA to disgorge the revenues from the pineapple sales would put Del Monte in a better position than if INPROTSA had complied with the agreement.  In other words, ordering disgorgement under these unique circumstances would simply serve to punish INPROTSA, which would violate the Supreme Court's instruction that "a wrongdoer should not be punished by paying more than a fair compensation to the person wronged." *Liu v. S.E.C.*, 140 S. Ct. 1936, 1943 (2020) (quotation marks omitted and alteration accepted).

Accordingly, we hold that the district court did not abuse its discretion in refusing Del Monte's request for disgorgement as a contempt sanction.[3]

**AFFIRMED**.

---

[3] INPROTSA's Motion for Limited Remand is denied.